UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DAVID DONATO,

                            Plaintiff,

             v.                                         9:04-cv-1160

MICHAEL PHILLIPS, COMMISSIONER HEARING
OFFICER, DONALD SELSKY, DIRECTOR
INMATE GRIEVANCE PROGRAM AND FLOYD
BENNETT, SUPERINTENDENT, ELMIRA
CORRECTIONAL FACILITY,

                            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

      Plaintiff David Donato commenced the instant action pursuant to 42 U.S.C. § 1983 claiming that he was denied his procedural due process rights in connection with discipline imposed upon him while incarcerated at the Elmira Correctional Facility. Presently before the Court is Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56 seeking dismissal of the Complaint in its entirety.

**I.    FACTS**

      On October 19, 2000, Plaintiff provided a urine sample for a urinalysis. Plaintiff was selected for a urine test based on a computer printout from the New York State Department of Correctional Services' Central Office in Albany that randomly selects from inmates who have had drug-related misconduct within the past two years, twice a year. The urinalysis tested positive for cannabinoids. The urine sample was collected in the presence

of Officer Reisdorf. Reisdorf took the sample and placed it in the refrigerator. Officer Brannen obtained the specimen from the refrigerator and performed the urinalysis. A second urinalysis was performed on October 20, 2000. This test also came back positive for cannabinoids. As a result of the urinalysis, Plaintiff was issued an inmate behavior report dated October 20, 2000. The report charged Plaintiff with a violation of rule 113.24 that prohibits inmates from using, or being under the influence of, any narcotics or controlled substance unless prescribed by a health services provider. Plaintiff disputed the results of the test because he was tested on October 13 and October 31, both of which were negative for cannabinoids. Plaintiff, therefore, believed that the positive test results on the 19th and 20th were the result of a contaminated urine sample or the result of medications he may have been taking.

Defendants contend that a hearing was commenced on the misbehavior report on October 26, 2000. Plaintiff denies that the hearing began on that date, but claims that the hearing actually commenced at a later time. Defendant Michael Phillips acted as the hearing officer. During the hearing, Plaintiff requested that Officer Reisdorf be called as a witness. Plaintiff did not list Officer Residorf as a witness on his Assistant Form. After considering the misbehavior report and the evidence submitted at the hearing, including evidence of Plaintiff's history of nine prior drug/alcohol-related matters, Phillips concluded that Plaintiff violated rule 113.24. Phillips imposed a penalty of twenty-four months in the Special Housing Unit ("SHU") with a corresponding loss of privileges and recommended loss of 36 months of good time.

Plaintiff appealed the hearing to the Commissioner. Upon considering the appeal, Defendant Donald Selsky, Director of the Department of Correctional Services' Special

Housing/Inmate Disciplinary Program advised Plaintiff that his penalty had been reduced to twelve months in SHU, twenty-four months loss of privileges, and thirty-six months of recommended loss of good time.

Thereafter, Plaintiff commenced an Article 78 proceeding challenging the disciplinary disposition. On September 14, 2001, the Washington County Court issued an order annulling the hearing officer's determination, ordering it expunged from Plaintiff's file, and ordering that Plaintiff be released from any penalties related to the hearing officer's determination. The basis for the court's determination was that "the hearing officer failed to give a reason why C.O. Reisdorf was not presented for testimony as is required by section 254.5 of Title 7 of the New York Codes, Rules and [Regulations (hereinafter, 'NYCRR')." Washington County Court concluded that Defendants' "violation of their own regulation under the circumstances here was also a violation of [Plaintiff's] constitutional right to call witnesses."[1]

On October 5, 2001, Plaintiff was transferred to general population at Elmira Correctional Facility. Neither Defendants Selsky nor Bennett were involved in deciding where, or when, Plaintiff would be transferred.

Plaintiff commenced the instant action contending that Defendants denied his due process rights by failing to allow certain documentary evidence; failing to commence the

---

[1] The state court did not indicate whether its finding was made under the state or federal constitution. For the reasons stated below, this Court finds that the violation of section 254.5 for failure to state the reasons for refusing to allow an inmate to call a witness does not necessarily implicate federal due process concerns. The United States Supreme Court has stated that the hearing officer must provide an explanation for his rulings either at the time of the disciplinary hearing or subsequently in court. See Ponte v. Real, 471 U.S. 491, 499 (1985).

- 3 -

hearing within seven days; being sarcastic, condescending, and biased during the hearing process; and denying Plaintiff's right to call a witness.

## II.     STANDARD OF REVIEW

It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 592 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A party seeking summary judgment bears the burden of informing the Court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the movant is able to establish a basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in his favor. Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002). However, a party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory

allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d. Cir. 1998).

### III.  DISCUSSION

The primary issues presented are whether Plaintiff was denied his due process rights because: (1) he was unable to have Officer Reisdorf and Inmate Harrison testify at his disciplinary hearing; and (2) the hearing did not commence within seven days.

Plaintiff first contends that he was denied his due process rights because the hearing officer failed to required Officer Reisdorf to testify. Defendants contend that Plaintiff waived the right to have Officer Reisdorf testify. For the following reasons, the Court finds that Plaintiff waived his right to have Officer Reisdorf testify and that, in the alternative, the failure to have Officer Reisdorf testify did not constitute a denial of Plaintiff's due process rights.

 "An inmate charged with a violation must be given (1) advance written notice of the charges at least 24 hours before the hearing; (2) the opportunity to appear at the hearing, to call witnesses, and to present rebuttal evidence; and (3) a written statement by the factfinders as to the evidence relied on for their decision, and the reasons for the prison committee's action." Freeman v. Rideout, 808 F.2d 949, 953 (2d Cir.1986). "An inmate has a due process right to summon witnesses in his defense at a prison disciplinary hearing. . . ." Bedoya v. Coughlin, 91 F.3d 349, 352 (2d Cir. 1996). "[A]n inmate's silence can constitute a waiver of his due process right to request witness testimony at a disciplinary hearing." Id. Moreover, "if a prison official, presiding over a prison disciplinary hearing, reasonably concludes that it would be futile to call a witness to testify, his failure to do so will not constitute a violation of the prisoner's constitutional rights." Silva v. Casey, 992 F.2d 20, 22

(2d Cir. 1993). Prison officials have the discretion to keep the hearing within reasonable limits and, as such, may refuse to call a witness for "irrelevance [or] lack of necessity." Wolff v. McDonnell, 418 U.S. 539, 566 (1974).

On his Assistant Form, Plaintiff failed to request that Officer Reisdorf testify at the hearing. During the hearing, Plaintiff requested that Reisdorf testify. See Def.'s Ex. B at 65. Phillips attempted to contact Reisdorf by telephone, but was unable to reach him because Reisdorf was not working that day. Id. Upon learning of Reisdorf's unavailability, Plaintiff did not ask for an adjournment until such time as Reisdorf would be available. Id.[2] It, thus, may be argued that Plaintiff waived his right to call Residorf.

Assuming Plaintiff did not waive the right to call Reisdorf, Plaintiff has failed to demonstrate that he has been prejudiced by the failure to call or interview Reisdorf. In his memorandum of law, Plaintiff argues that "[t]he foremost purpose of Plaintiff Donato calling Reisdorf as a witness was (to the knowledge of Defendant Phillips) to establish that there must have been an inappropriate/sinister interference with the chain of custody of the urine sample which resulted in the false positive." Pl.'s Mem. of Law at 13. This contention is unsupported by any record evidence, and no fair-minded trier of fact could reasonably conclude otherwise. The record is clear that Plaintiff did not request Reisdorf to testify for this purpose. Rather, Plaintiff sought Reisdorf's testimony to explain *why* he was obligated to give a urine sample on October 19. See e.g., Def.'s Ex. B at 63-65.[3] At page 91 of the

---

[2] Although Plaintiff did later request to call as a witness the officer who took the urine sample on October 12, the October 12 sample was, and remains, irrelevant to the positive test conducted on October 19 that was the subject of the misbehavior report.

[3] Plaintiff contended that he was informed by Reisdorf that the test was "confidential" rather than a random test ordered by the Department of Correctional Services out of Albany. Def's Ex. B at
(continued...)

hearing transcript, for example, Plaintiff renewed his request that Reisdorf be called to testify. The reason for this request, however, was to "conduct an investigation and, and also find out exactly why [he] was ordered to give this urine specimen." See Def.'s Ex. B at 91. As noted *supra* at note 2, the reason why Plaintiff gave a urine sample was, and remains, irrelevant to whether he tested positive for illegal drugs. Further, as Phillips concluded, Reisdorf's testimony as to the reason why Plaintiff was obligated to provide a urine specimen would have been cumulative because Correction Lieutenant Miller testified concerning the reason for the urine test. Def.'s Ex B at 10, 28, 64-68. Miller testified that Plaintiff was directed to provide a urine sample based on a "random prior" list sent from DOCS in Albany.[4] Even if Reisdorf would have contradicted Miller's testimony, as discussed, that factual issue was irrelevant.

With respect to Plaintiff's chain of custody argument, he never challenged any chain of custody issues while the urine sample was in Reisdorf's possession. Id. at 30-31, 78. Rather, Plaintiff's allegations concerned Officer Brannan's handling of the urine once he removed the sample from the refrigerator. Id. Although Plaintiff contends that, at page 77 of the hearing transcript, he expressed his belief that something may have gone wrong with the chain of custody concerning his urine sample, Plaintiff never indicated that Officer Reisdorf

---

[3](...continued)
62-65. Whether the test was "confidential", conducted pursuant to a random testing program, or conducted for some other reason is irrelevant to Plaintiff's argument as to whether there was a break in the chain of custody from the time the urine sample was collected until the time the urinalysis was performed. Plaintiff never argued that the urine sample was unlawfully collected or that Defendants were not otherwise authorized to collect the urine. Rather, it was Plaintiff's contention that the test results were pre-determined and that he was misinformed as to the reason for the test.

[4] A "random prior" means that the inmate had previously tested positive as a result of a random test.

was necessary for such a defense. To the contrary, Plaintiff's allegations concerning any mishandling of the urine sample focused on handling by Officer Brannen. Def's Ex. B at 77-79. Plaintiff fails to point to any evidence in the record suggesting that he sought to call Officer Reisdorf regarding any mishandling of the urine sample.

For the foregoing reasons, the Court finds that Phillips had a justifiable reason for refusing to have Reisdorf testify because: (1) Plaintiff did not request Reisdorf on his assistance form; (2) Reisdorf was unavailable and Plaintiff failed to request an adjournment; (3) Plaintiff never articulated to Phillips that he wanted Reisdorf to testify with respect to chain of custody issues, thereby precluding Phillips from addressing the need to call Reisdorf for that purpose, see Scott v. Kelly, 962 F.2d 145, 147 (2d Cir. 1992) (noting that where the inmate fails to advise the hearing officer what the testimony would be, the hearing officer has "no reason to believe that the testimony would be relevant or that it would affect his decision."); (4) as Phillips found, Reisdorf's testimony concerning the reason for the test (confidential v. random) would have been cumulative to the testimony of Miller who testified that the test was in conjunction with the random testing procedures; and (5) the reason for the test was irrelevant to any chain of custody issues or the propriety of the test itself.

Plaintiff next contends that Phillips violated his due process rights by failing to call Inmate Harrison to testify at the hearing. This argument, too, must be rejected. Plaintiff sought to call Harrison to corroborate Plaintiff's claim that Officer Sears told Plaintiff that the urine sample was being collected for "confidential" purposes and that he was in "trouble." Sears testified at the hearing that he made no such statement to Plaintiff. As Phillips stated at the hearing:

> Let's presume for the sake of argument that Officer Sears . . . did, in fact, tell you that ah, you had to go for a urinalysis test and that you were in trouble. Bottom line is, so what? . . . . Let's presume again . . . that he did write you a pass. . . . Presuming what you're telling me is the truth, . . . I don't care if he told you that that was the case because you know as well as I, that . . . Lieutenant Miller, came in here, he testified that your name came up on a random prior screen from Albany, and he introduced a document which has your name on it, which has a date of 10/17/2000 on it, which directed that you be tested.

Def.'s Ex. B at 75-76. Phillips reasonably was entitled to determine that Miller's testimony, as substantiated by the documentary evidence, was credible and that any testimony concerning the reasons given to Plaintiff for the test were irrelevant to whether he, in fact, tested positive for marihuana use. Phillips also reasonably concluded that any testimony by Harrison would be redundant to Plaintiff's own claims about what he was told by Officer Sears. See Scott, 962 F.2d at 147; Russell v. Selsky, 35 F.3d 55, 59 (2d Cir. 1994) (a prison disciplinary hearing officer may refuse to allow willing witnesses to testify where their testimony would be cumulative). For reasons previously discussed, Phillips reasonably concluded that the reason why Plaintiff's urine was tested was irrelevant to the misbehavior report. See Phillips Aff. at ¶ 13; see also Ponte, 471 U.S. at 499 (the hearing officer must provide an explanation for his rulings either at the time of the disciplinary hearing or subsequently in court). Accordingly, the failure to call Inmate Harrison did not prejudice Plaintiff and did not deprive him of his right to due process of law.

The final issue is whether Plaintiff's procedural due process rights were violated because the disciplinary hearing was not commenced within seven days of Plaintiff's placement in SHU. New York State regulations require disciplinary hearings to commence within seven days after the inmate is placed in SHU. See 7 N.Y.C.R.R. §251-5(a); Tellier v. Fields, 280 F.3d 69 (2d Cir. 2000); Wright v. Smith, 21 F.3d 496 (2d Cir. 1994). The

misbehavior report was dated October 20, 2000. Plaintiff was served with the report on October 21, 2000. Def.'s Ex. B at 1. On October 26, 2000, the parties convened to conduct a hearing on the misbehavior report. Id. Because Phillips determined that Plaintiff was not provided with certain documents, he adjourned the hearing. Id. at 5. Plaintiff did not enter a plea to the charge until on or about October 31, 2000. After various other adjournments, the hearing concluded on November 2, 2000.

Plaintiff contends that Defendants violated the requirement that the hearing commence within seven days because he did not enter his plea until October 31. As an initial matter, Plaintiff waived, or failed to exhaust this claim, because he did not raise this issue on appeal to the Superintendent or raise it otherwise before the instant litigation. Khalild v. Reda, 2003 WL 42145, at *5 (S.D.N.Y. 2003). In any event, this claim fails. The failure to provide a hearing precisely within the time specified in the regulations does not form the basis of a constitutional violation. This is so for several reasons. First, confinement in SHU creates a liberty interest only insofar as such confinement imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Sandin v. Connor, 115 S. Ct. 2293 (1995). There is no evidence in the record that the days Plaintiff spent in SHU pending the commencement of the hearing imposed an atypical and significant hardship on him. See Sandin v. Connor, 115 S. Ct. 2293 (1995); Forman v. Morales, 112 F.3d 503 (2d Cir. 1996) (unpublished decision); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996). It, therefore, follows that the failure to provide a hearing within this time frame cannot implicate due process concerns. See Forman, 112 F.3d at *1; see also Williams v. Kane, 1997 WL 527677, at *7-8 (S.D.N.Y. 1997). If there is no affront to an inmate's rights of due process where an inmate is not provided any hearing for placement in SHU or keeplock of

periods of 30 days or less, there can be no due process violation for a hearing that occurs within two weeks of placement in SHU.

Second, the seven-day rule in the New York regulations are not constitutional requirements. As previously noted, "[a]n inmate charged with a violation must be given (1) advance written notice of the charges at least 24 hours before the hearing; (2) the opportunity to appear at the hearing, to call witnesses, and to present rebuttal evidence; and (3) a written statement by the factfinders as to the evidence relied on for their decision, and the reasons for the prison committee's action." Freeman v. Rideout, 808 F.2d 949, 953 (2d Cir.1986). Here, Plaintiff was provided advance written notice of the charges and an opportunity to be heard, to call witnesses, and to present rebuttal evidence. Moreover, the hearing was held within a reasonable time. As one court has stated:

> Plaintiff's contention regarding the time frame of the hearing does not raise a constitutional claim. Plaintiff argues that the hearing did not occur until his ninth day of SHU confinement, which is in violation of New York State regulations that require hearings be held within seven days of confinement. See 7 N.Y.C.R.R. § 251-5.1(a). However, "[f]ederal constitutional standards rather than state law define the requirements of procedural due process." Russell v. Coughlin, 910 F.2d 75, 78 (2d Cir. 1990). Those standards require only that the hearing be held within a "reasonable time" and not within any number of days. "What is considered a 'reasonable time' will depend upon the particular situation being examined." Id.
>
> Plaintiff's hearing began nine days after he began SHU confinement, which is within the time period courts have held to be reasonable. Russell v. Coughlin, 774 F.Supp. 189, 197 (S.D.N.Y. 1991) (eleven day delay not unreasonable where defendants provided reasons); Bolanos v. Coughlin, No. 91 Civ. 5330, 1993 WL 762112, *15 (S.D.N.Y. Oct. 15, 1993) (eight day delay). . . . Such minor delays do not rise to the level of a constitutional violation of plaintiff's due process rights.

Shell v. Brzezniak, 365 F. Supp.2d 362, 376 (W.D.N.Y. 2005); see also Odom v. Keane, 1998 WL 720671 (S.D.N.Y. 1998) (hearing commenced on 8th day did not violate prisoner's

due process rights); Garcia v. Coughlin, No. 92 Civ. 0392, 1993 WL 177819, at *2 (S.D.N.Y. May 17, 1993) ("Specific time limits imposed by state procedural requirements do not give rise to federally protected constitutional rights."), aff'd, 17 F.3d 391 (2d Cir.1993); see also Russell v. Coughlin, 910 F.2d 75, 78 n.1 (2d Cir. 1990); Foxworth v. Selsky, 1998 WL 59448 (N.D.N.Y. 1998); Johnson v. Coughlin, 1997 WL 431065 (S.D.N.Y. 1997); Kingwood v. Coombe, 1997 WL 323913 (S.D.N.Y. 1997). Here, it is evident that several adjournments were provided to allow Plaintiff a meaningful opportunity to defend himself on the misbehavior report. For example, Phillips adjourned the meeting to allow Plaintiff to review certain documents and find various witnesses to testify. Accordingly, the Court finds no due process violation with respect to the timing of the hearing.

With respect to Plaintiff's claims that Phillips failed to allow certain documents into evidence, Plaintiff has failed to point to what evidence was not admitted and why the failure to admit such evidence was prejudicial to him. Having reviewed the hearing transcript, the Court finds that the documentary evidence excluded by Phillips was irrelevant to Plaintiff's defense. Plaintiff has similarly failed to point to sufficient evidence of sarcasm or bias on the part of Phillips such that he was denied a fair hearing.

Finally, to the extent Plaintiff challenges the length of time he remained in SHU following the order of the Washington County Court annulling the hearing officer's determination, Plaintiff has failed to demonstrate that any of the named Defendants were personally involved in the decision to continue his placement in SHU or transfer him to another non-SHU facility. See Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

**IV.    CONCLUSION**

For the foregoing reasons, the Court finds that Plaintiff has failed to demonstrate the violation of any constitutional rights. Accordingly, Defendants' motion for summary judgment is GRANTED and the Complaint is DISMISSED.

IT IS SO ORDERED.

Dated: January 17, 2007

Thomas J. McAvoy
Senior, U.S. District Judge